```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF VIRGINIA

                          Alexandria Division


JEANNIE'S JEWELERS, INC.,      )
                               )
    Plaintiff,                 )
                               )
         v.                    )    1:12cv265 (JCC/IDD)
                               )
ADT SECURITY SERVICES, INC.,   )
et al.,                        )
                               )
    Defendants.                )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants ADT Security Services, Inc. ("ADT"), Broadview Security, Inc. ("Broadview"), and Brink's Home Security, Inc.'s ("Brink's") (collectively "Defendants") Motion to Dismiss [Dkt. 3] (the "Motion").  For the following reasons, the Court will grant Defendants' Motion.

### I. Background

This case involves allegations of negligence and breach of contract against a security company in connection with the burglary of a jewelry store.

    A.   Factual Background

Plaintiff Jeannie's Jewelers, Inc. ("Plaintiff" or "Jeannie's") is the owner of a jewelry store located in Falls Church, Virginia.  (Compl. [Dkt. 1 Ex. A] ¶ 1.)  Thuy "Jeannie"

1

Nguyen is the president and sole shareholder of Jeannie's. (*Id.*) On March 26, 2009, Jeannie's entered into a contract with Defendant ADT for security services.[1] (Compl. ¶ 5.) Nguyen, on behalf of Jeannie's, executed a Protective Service Agreement ("PSA") with ADT. (*Id.*) ADT thereafter installed a security system in Jeannie's store. (Compl. ¶ 6.) The installing technician represented that the system was operational. (*Id.*)

On December 14, 2009, Plaintiff's store was burglarized. (Compl. ¶ 7.) Jeannie's alleges that the security system installed by ADT was not fully operational at the time of the burglary. (Compl. ¶ 8.) Among its defective components were the line-cut feature (which triggers the alarm in the event a phone line is cut), indoor motion detectors, and a sensor affixed to the store's safe. (*Id.*)

The PSA included certain provisions allocating risk between the parties (the "risk allocation provisions"). For example, Sections 7(b) and 7(c) emphasize that ADT is not an insurer and that it is the purchaser's obligation to obtain adequate insurance. (*See* Defs.' Mem. Ex. 1 ("PSA") [Dkt. 4-2]

---

[1] Jeannie's in fact contracted with Defendant Brink's. Brink's subsequently changed its name to Broadview Security, Inc., and Broadview, in turn, later merged with ADT. (Compl. ¶ 2.) ADT is successor in interest to Brink's, and is bound to the contract at issue in this case. (*See* Defs.' Mem. Ex. 1 ("PSA") [Dkt. 4-2] § 12(c).) The parties agree that ADT is the proper defendant in this action. (Defs.' Mem. [Dkt. 4] at 1 n.1; Opp. [Dkt. 8] at 1 n.1.) While all references in the contract are to Brink's, this Memorandum Opinion will, for purposes of clarity, refer solely to ADT.

2

§§ 7(b) & (c).)[2] In Section 7(d), the PSA states that it is "impractical and extremely difficult" to fix actual damages resulting from ADT's breach of the PSA or the failure of the protective equipment to operate properly. (*See* PSA § 7(d).) Accordingly, Section 7(e) limits ADT's liability to "NOT MORE THAN THE TOTAL AMOUNT OF FEES ACTUALLY PAID TO BRINK'S . . . DURING THE TWELVE-MONTH PERIOD PRECEDING THE EVENT OR OMISSION" giving rise to the purchaser's claim. (*See* PSA § 7(e) (capitalization in original).) Immediately above the signature line on the PSA is a statement which reads as follows: "**YOU . . . ACKNOWLEDGE THAT YOU UNDERSTAND SECTION 7 WHICH LIMITS BRINK'S LIABILITY AND THAT YOU MAY INCREASE BRINK'S LIMITATION OF LIABILITY BY PAYING AN ADDITIONAL CHARGE TO BRINK'S.**" (PSA at 1 (capitalization and bold in original).) Jeannie's further agreed on the Installation Work Order that "Brink's Home Security is providing the Protective Equipment to you subject to the terms and conditions of your Protective Service Agreement including Sections 6 through 8." (Defs.' Mem. Ex. 1 at 4.)[3]

---

[2] Jeannie's attaches a copy of the PSA to its Complaint and expressly incorporates the document by reference. (Compl. ¶ 5.) The Court may therefore consider the text of the PSA in ruling on Defendants' Motion to Dismiss. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted). Defendants also include the PSA as an exhibit to their Motion. The Court cites to Defendants' exhibit because Jeannie's does not challenge its authenticity and Jeannie's exhibit is illegible. *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (a court reviewing a Rule 12(b)(6) motion may consider documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

[3] Section 12(a) of the PSA provides that "[t]he entire agreement between you and Brink's consists of this Protective Service Agreement and the following . . . Customer Emergency Information Schedule [and] Installation Work Order."

Jeannie's asserts claims for negligence and breach of contract, alleging that it sustained $2.2 million in lost merchandise as a result of the burglary. The PSA, however, limits Jeannie's recovery on such claims to the amount it paid for twelve months of service, which at $35.99 per month (*see* PSA § 2(b)) comes to $431.88.

B. Procedural Background

Plaintiff originally filed suit in Arlington County Circuit Court on May 27, 2011. [Dkt. 1 Ex. A.] Defendants were not served with a copy of the Complaint until February 17, 2012. Defendants then removed the case to this Court on March 9, 2012. [Dkt. 1.] On March 16, 2012, Defendants filed a Motion to Dismiss. [Dkt. 3.] Plaintiff filed an opposition on March 30, 2012 [Dkt. 8], to which Defendants replied on April 4, 2012 [Dkt. 10]. On May 11, 2012, the Court held oral argument.

Defendants' Motion is before the Court.

**II. Standard of Review**

Rule 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can

---

(PSA § 12(a).) Jeannie's only attached the PSA to its Complaint, while Defendants include the PSA as well as the Customer Emergency Information Schedule and Installation Work Order as exhibits to their Motion to Dismiss. Jeannie's does not challenge the authenticity of these documents. Because all three documents constitute the parties' entire agreement, only a portion of which Jeannie's attached to the Complaint, the Court may consider the Customer Emergency Information Schedule and Installation Work Order in connection with this Motion. *See ScanSource, Inc. v. Thurston Grp., LLC*, No. DKC 11-0380, 2011 WL 1884775, at *1 n.1 (D. Md. May 18, 2011) (considering the full copy of a contract submitted as an exhibit to defendant's motion to dismiss, where plaintiff excerpted only a portion of the contract in its complaint).

4

be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994). In addition to the complaint, documents integral to and explicitly relied on in the complaint may be considered if the plaintiff does not challenge their authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

In deciding a Rule 12(b)(6) motion, a court must be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### III. Analysis

In their Motion, Defendants argue that Jeannie's negligence claim fails for want of a duty independent of ADT's contractual obligations. Defendants also argue that Jeannie's breach of contract claim fails to the extent it seeks damages above the defined amount set forth in the PSA. The Court first determines the governing law and then addresses each of Defendants' arguments in turn.

    A.    <u>Governing Law</u>

Neither party discusses choice of law, but both assume that Virginia law applies. Based on the factual allegations in the Complaint and a review of the PSA, this assumption is correct. As a federal court exercising diversity jurisdiction, the Court must apply the choice of law rules of the forum state,

*i.e.*, Virginia.  *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  With respect to Jeannie's breach of contract claim, Virginia law favors contractual choice of law provisions, giving them full effect except in unusual circumstances, *see Tate v. Hain*, 181 Va. 402, 410 (Va. 1943), none of which are present here.  Here, the PSA provides that "[t]he laws of the state of the installation location govern the validity, enforceability and interpretation of th[e] Agreement." (PSA ¶ 12(d).)  The relevant contractual issue concerns the validity and effect of the risk allocation provisions in the PSA.  Therefore, pursuant to the choice of law provision in the PSA, the law of Virginia, *i.e.*, the installation location, applies to Plaintiff's breach of contract claim.  As for Jeannie's negligence claim, the Court adheres to the *lex loci delicti*, or place of the wrong, standard which is the settled rule in Virginia for tort claims.  *Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3, 5 (Va. 1993).  Here, it is alleged that ADT installed a faulty security system at Jeannie's store in Falls Church.  Thus the alleged wrong occurred in Virginia and Virginia law applies to Jeannie's negligence claim as well.

   B. <u>Negligence</u>

  "To establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the parties solely by

virtue of a contract." *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136 (Va. 1999) (citing *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241 (Va. 1991)).  This rule applies equally to allegations of ordinary and gross negligence.  *See Gedrich v. Fairfax Cnty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 476 (E.D. Va. 2003).  Whether a common law duty of care exists is a question of law.  *Holles*, 257 Va. at 136.

Guided by these principles, this Court previously dismissed a negligence claim brought in connection with an alarm services contract.  *See Carytown Jewelers, Inc. v. ADT Sec. Servs., Inc.*, No. 3:05cv84, 2005 WL 1147800, at *3 (E.D. Va. May 16, 2005).  The Court noted that the negligence claim simply alleged that the defendant negligently performed the contract and was a mere "recasting of the breach of contract claim."  *Id.*  "Because the duty allegedly performed in a negligent way was created by contract, there [wa]s no negligence claim available under Virginia law."  *Id.* (citing *Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 559 (Va. 1998)).

In order to avoid the outcome in *Carytown*, Jeannie's must demonstrate that ADT had a duty to provide alarm services independent of the one imposed by contract.  In this vein, Jeannie's contends that because ADT rendered services for the purposes of protecting its property, a common law duty exists.  In support of its argument, Jeannie's turns to Section 323 of

8

Restatement (Second) of Torts, a provision which has been applied by Virginia courts. Section 323 provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a)  his failure to exercise such care increases the risk of such harm, or
>
> (b)  the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

No Virginia courts appear to have analyzed the application of Section 323 in the context of an alarm services contract. However, other courts have, and concluded that Section 323 does not give rise to a duty independent of the parties' contractual obligations. *See Lala v. ADT Sec. Servs., Inc.*, No. 10-2698, 2010 WL 4923452, at *4 (D.N.J. Nov. 29, 2010). In *Lala*, the court determined that *Pfenninger v. Hunterdon Central Regional High School*, 167 N.J. 230 (N.J. 2001), a New Jersey case applying Section 323 and cited by the plaintiff, "did not hold that a plaintiff may convert a breach of contract into tort claims simply because the contract dealt with the protection of persons or things." *Lala*, 2010 WL 4923452, at *4. Rather, the case stood for the "proposition that a plaintiff may assert tort claims against a defendant with

9

whom he had a contract, but only if those claims arose out of some legal duty other than the one imposed by the contract."[4] *Id.* Because the plaintiff simply asserted that the defendant did not carry out its obligation to provide alarm services (which arose solely out of contract), the court granted summary judgment in favor of the defendant on all tort claims. *Id.; see also C-N-P Nw., Ltd. v. Sonitrol Corp.*, No. 06-CV-2516, 2008 WL 251816, at *8 (D. Minn. Jan. 29, 2008) (recommending that summary judgment be granted in favor of defendant on negligence claim where plaintiffs "failed to cite to any Minnesota case where a party has been held liable in tort, pursuant to the Restatement for failing to perform the services it agreed to perform in a contract").

---

[4] In reaching this determination, the court in *Lala* focused on a sentence in *Pfenninger* which immediately preceded the New Jersey Supreme Court's recitation of Restatement § 323: "[I]f a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Lala*, 2010 WL 4923452, at *4 (quoting *Pfenninger*, 167 N.J. at 241). The Virginia Supreme Court has held the same:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*McDevitt*, 256 Va. at 558.

The Virginia cases applying the Restatement which Jeannie's cites are distinguishable, as they addressed whether a legal duty existed between parties in the absence of a contract. *See, e.g.*, *Kellermann v. McDonough*, 278 Va. 478, 489 (Va. 2009) (supervising adults to visiting minor); *Didato v. Strehler*, 262 Va. 617, 628-29 (Va. 2001) (medical providers to parent of child); *Boland v. Rivanna Partners, LLC*, 69 Va. Cir. 308, 2005 WL 3105359, at *3 (Va. Cir. Ct. Nov. 21, 2005) (snow removal contractor to non-contracting party). Here, by contrast, ADT's obligation to install a security system arose solely by way of contract. Contrary to Jeannie's assertion, there is no common law duty to provide alarm services. *See Lala,* 2010 WL 4923452, at *4; *see also Valenzuela v. ADT Sec. Servs., Inc.*, Nos. 10-56455, 10-56517, 2012 WL 1131535, at *1 (9th Cir. Apr. 5, 2012) (unpublished) (finding no duty to provide alarm services independent of parties' contract); *Spengler v. ADT Sec. Servs., Inc.*, 505 F.3d 456, 458 (6th Cir. 2007) (same). Accordingly, Jeannie's negligence claim is dismissed.[5]

C. <u>Limitation of Liability</u>

As outlined in Section I.A., *supra*, the PSA contained risk allocation provisions, which limited ADT's liability -- including on breach of contract claims -- to a defined amount.

---

[5] Because Jeannie's tort claim fails, so too does its request for punitive damages. *See Kamlar Corp. v. Haley*, 224 Va. 699, 706-07 (Va. 1983) (holding that proof of an independent, willful tort, beyond the mere breach of a duty imposed by contract, is required as a predicate for an award of punitive damages, regardless of the motives underlying the breach).

The Fourth Circuit and other courts across the nation have found similar provisions in alarm services contracts permissible.  *See Gill v. Rollins Protective Servs. Co.*, 722 F.2d 55, 58-59 (4th Cir. 1983) (upholding limitation of liability provision in alarm services contract against a negligence claim); *see also Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir. 1993) ("From all that the parties have cited to us and from all that our own research has unearthed, it appears that all of the courts that have considered the validity of limitation-of-liability clauses in contracts for the provision of [alarm] systems have found those clauses to be permissible.") (collecting cases).  Indeed, this position has evolved into basic hornbook law.  *See, e.g.*, Majorie A. Shields, Validity, Construction, and Application of Exculpatory and Limitation of Liability Clauses in Burglary, Fire and Other Home and Business Monitoring Service Contracts, 36 A.L.R. 6th 305 (2008) ("A company that provides an alarm system may, by contract, limit its liability to a specific amount or exculpate itself from liability.")

Jeannie's does not argue that the risk allocation provisions are unenforceable.  Instead, Jeannie's contends that the risk allocation provisions, and the entire contract, never took effect.  Specifically, Jeannie's points to Section 3(a) of the PSA, which provides that "[y]ou will take and pay for the

Service during an initial term of three years[6] commencing from the date Brink's makes the Protective Equipment operational." (PSA § 3(a).)  Jeannie's argues that because the security system was not fully operational at the time of the burglary, the contract never became effective.  This argument is only helpful to Jeannie's, however, if there is a common law duty to provide alarm services which supports its negligence claim.  Because the Court concludes that there is not, a finding that a contract never existed would merely serve to foreclose Jeannie's breach of contract claim, resulting in dismissal of the Complaint in its entirety.[7]

Under Federal Rule of Civil Procedure 8(d)(3), parties may plead inconsistent facts and inconsistent legal theories.  5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1283 (3d ed. 2010).  Thus, Jeannie's argument that a contract never existed does not necessarily dictate dismissal of its breach of contract claim.  In fact, Defendants themselves argue that a contract existed. (Reply [Dkt. 10] at 5-6.)  Rather than seeking dismissal of Jeannie's breach of contract claim, Defendants request that damages be limited to the contractually agreed-upon amount.  (Reply at 7.)

---

[6] Section 3 of the PSA was originally titled:  INITIAL THREE-YEAR TERM AND RENEWAL TERMS.  The word "THREE" was crossed out by hand, and the word "five" written above it.  Thus, the initial term was apparently extended to five years.
[7] Jeannie's also argues that the risk allocation provisions should be construed strictly so as to exclude claims of gross negligence and willful and wanton negligence.  Of course, this argument is also fruitless given the dismissal of Jeannie's negligence claim.

Based on the Complaint and the documents properly considered in connection with this Motion, the Court finds that a contract plausibly took effect. Jeannie's of course executed a written contract with ADT. Directly above where Nguyen signed the Installation Work Order on behalf of Jeannie's, the document reads: "You accept the Brink's Protective Equipment and acknowledge its placement, installation, demonstration and testing to your satisfaction."[8] (Defs.' Mem. Ex. 1 at 4.) And, while Jeannie's alleges that the security system was not fully operational at the time of the burglary, this does not necessarily suggest that the security system was *never* operational. For these reasons, Jeannie's breach of contract claim survives notwithstanding its alternative theory that a contract never existed. That said, Jeannie's advances no argument as to why the risk allocation provisions in the PSA should not limit the damages it may seek for breach of contract. As such, Jeannie's potential recovery on its breach of contract claim is limited as set forth in Section 7(e) of the PSA. *See Jhaveri v. ADT Sec. Servs., Inc.*, No. 2:11-cv-4426, 2012 WL 843315, at *7 (C.D. Cal. Mar. 6, 2012) (on a Rule 12 motion, limiting plaintiffs' potential recovery on breach of contract

---

[8] When the bare allegations of a complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail. *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

claim in accordance with risk allocation provisions set forth in the parties' agreement).

### IV.   Conclusion

For these reasons, the Court will grant Defendant's Motion.

An appropriate Order will issue.

|  |  |
|---|---|
|  | /s/ |
| May 22, 2012 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |